IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY MONIQUE MIKESELL, | No. 2:16-CV-1850-JAM-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

/ / /

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 17, 2012. In the application, plaintiff claims that disability began on May 4, 2012. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 2, 2014, before Administrative Law Judge ("ALJ") Odell Grooms. In a February 2, 2015, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): adult attention deficit disorder, general anxiety disorder, and major depressive disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform a full range of work at all exertional levels; she can perform simple tasks in a setting requiring no more than occasional interaction with the general public, co-workers, and supervisors; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on June 16, 2016, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1 v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) despite finding that plaintiff has moderate limitations in concentration, persistence, and pace, the ALJ erred by not accounting for such limitations in his residual functional capacity assessment; (2) the ALJ failed to properly analyze lay witness evidence; and (3) the vocational expert's testimony is not supported.

### A.      **Residual Functional Capacity Assessment**

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.  Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

Regarding the severity of plaintiff's mental impairments, the ALJ found that plaintiff has "moderate difficulties." Regarding plaintiff's mental residual functional capacity, the ALJ stated:

> In terms of the limitations associated with the claimant's mental health symptoms, I find that the claimant would have some limitations interacting with others and performing tasks but not to the degree alleged. The record shows the claimant has been treated for adult attention deficit disorder, general anxiety disorder, and major depressive disorder. However, the mental status examinations do not support the claimant's allegations. Mental status examinations have shown the claimant to have a normal mood, affect, intact concentration, and an intact memory (Exs. 8F/11, 8F/14, 5F14). For example, on February 22, 2013, a mental status examination showed the claimant to have euthymic mood, appropriate affect, liner [sic] thought process, and an intact memory (Ex. 5F/13-14). On May 17, 2013, a mental status examination showed the claimant to have dysphoric mood and a leaner [sic] thought process (Ex. 7F/6). On October 13, 2014, the claimant was noted to have a euthymic mood and an appropriate affect (Ex. 8F/6). On November 5, 2014, the claimant was noted to have a congruent affect, an intact memory, and a clear thought process (Ex. 9F/12).
>
> In reviewing the record, I do acknowledge that the claimant has reported crying spells, anxiety, and difficulties concentrating; however, the record indicates that these symptoms are controlled with medications. On September 6, 2012, the claimant reported improvement with the Effexor and Wellbutrin (Ex. 2F/15). On June 28, 2013, the claimant reported that her mood and panic disorder are greatly improved. She also reported that her attention deficit disorder was also controlled (Ex. 7F/13). On September 9, 2013, the claimant reported that her mood has improved with Celexa, she reported that she no longer has crying spells (Ex. 7F/10). The claimant also reported that her anxiety is controlled and she only takes Klonopin when needed. The claimant also reported that her attention has improved as well and that she only need to take Adderall every other day (Ex. 7F/10). During the examination, the claimant was noted to be adequately groomed, cooperative, and calm (Ex. 7F/10). On November 14, 2013, the claimant denied having any mood swings, panic attacks, or feelings of hopelessness (Ex. 8F/16). The claimant's attitude was noted to be cooperative and her thought content was noted to be within normal limits (Ex. 8F/17). On December 13, 2013, the claimant reported that she is very happy with her current medications for depression. He reported that she use [sic] to cry all of the time but now handles stress well and is in a good mood (Ex. 8F/14). On July 7, 2014, the claimant reported that she is doing well with current medication without any side effects. She reported no sadness, depression, or anhedonia. The claimant stated she has been able to focus and organize her daily activities (Ex. 8F/3).

///

> Therefore, based on the medical evidence of record and giving the claimant the benefit of the doubt, I find that the claimant would have difficulty performing complex tasks and would have difficulty interacting with others and have accounted for these limitations in the RFC limiting the claimant to simple tasks with only occasional interaction with coworkers, supervisors, and the public.

With respect to the medical opinions, plaintiff's treating psychiatrists, Dr. Leif Skille, M.D., and Dr. Lou, M.D., opined that plaintiff has moderate restrictions in maintaining concentration, persistence, and pace. See CAR at Exhibits 5F and 7F).[1] As to these opinions, the ALJ stated:

> . . .I give these opinions some weight and have incorporated their opinions that the claimant has moderate limitations in social functioning and concentration, persistence, and pace herein. I find this portion of the opinions consistent with the record. . . .[2]

Plaintiff argues that the ALJ's finding that she has moderate limitations in concentration, persistence, and pace requires a finding of disability and remand for payment of benefits. The court does not agree. A finding of moderate limitations at steps two and three of the sequential analysis does not equate to a significant vocational limitation at step five. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). In this case, the ALJ properly accounted for plaintiff's limitations in concentration, persistence, and pace by limiting her to simple tasks. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

### B. Evaluation of Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100

---

[1] Citations are to the Certified Administrative Record ("CAR") lodged on May 11, 2017 (Doc. 11).

[2] Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence.

F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

As to lay witness evidence in this case, the ALJ stated:

> I have also considered information provided by the claimant's friend, Veda Hellevik (Ex. 3E). On March 30, 2013, Ms. Hellevik completed a Third Party Function reported [sic] and stated that the claimant has a difficult time starting and completing simple tasks. Ms. Hellevik reported that the claimant dresses herself (Ex. 3E/2). She reported that the claimant can prepare simple meals (Ex. 3E/3), Ms. Hellevik reported that she takes the claimant grocery shopping and clothes shopping with her (Ex. 3E/4). . . . The statements of the third party, in this case, have been given some weight since the claimant may have some limitations as described by the third party, but her impairments, as described by the third party, do not prevent performance of work under the above residual functional capacity. The claimant's ability to perform simple meals, go to church, and grocery shop suggests that she retains the mental abilities to remember at least simple tasks and interact with others appropriately.

Without any basis or support, plaintiff states: "Apparently, ALJ Grooms had a generalized suspicion of Ms. Hellevik's statement or he never read it." Also without further explanation, plaintiff states that "the ALJ erred in his analysis of Ms. Hellevik's Third Party Function Report."

The court finds no error. To the extent the ALJ rejected Ms. Hellevik's statement that plaintiff has difficulty starting and completing even simple tasks, the ALJ provided reasons germane to the testimony for rejecting it. Specifically, the ALJ noted that plaintiff's activities of daily living, which include preparing meals, going to church, and grocery shopping, indicate an ability to perform at least simple tasks.

/ / /

C.  **Vocational Finding**

The ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Regarding the step five vocational finding, the ALJ stated:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:
>
> • Janitor/building cleaner (DOT #381.687-018), unskilled (SVP 2), medium exertional level, of which there are 113,900 jobs in the state of California and over 1 millions jobs in the national economy;

///

| | |
|---|---|
| 1 | • Housekeeper/housekeeping cleaner (DOT # 323.687-014), unskilled (SVP 2), light exertional level, of which there are 46,400 jobs [in] the state of California and 382,500 jobs in the national economy; and |
| 2 | |
| 3 | |
| 4 | • Handpacker/handpackager (DOT # 920.687-018), unskilled (SVP 2), light exertional of which there are 46,100 jobs [in] the state of California and 324,900 jobs in the national economy. |
| 5 | |

        Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

According to plaintiff: "The ALJ's limitation of 'simple tasks' does not permit Ms. Mikesell to engage in the 'level 2' and 'level 3' reasoning required by the three jobs identified by the vocational expert. . . ."

        Plaintiff's argument is without merit. None of the jobs identified by the vocational expert require a reasoning level of 3. The janitor/building cleaner job requires a reasoning level of 2, see DOT # 381.687-018, the housekeeper/housekeeping cleaner job requires a reasoning level of 1, see id. at # 323.687-014, and the handpacker/handpackager job requires a reasoning level of 1, see id. at # 920.687-018. As to jobs requiring reasoning level 2 or below, the ability to perform simple tasks is compatible with such jobs. See Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 14) be denied;

2. Defendant's cross-motion for summary judgment (Doc. 19) be granted; and

3. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 2, 2018

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE